UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MICHAEL MOORE,

       Plaintiff,

      v.                                      Civil No. 05-6272-HA
                                            OPINION AND ORDER
JO ANNE B. BARNHART,
Commissioner of Social Security,

       Defendant.

HAGGERTY, Chief Judge:

      Plaintiff Michael Moore seeks judicial review of a final decision by the Commissioner of the Social Security Administration denying his application for Supplemental Security Income (SSI) disability benefits under Title XVI of the Social Security Act. This court has jurisdiction to review the Commissioner's decision under 42 U.S.C. § 405(g). For the following reasons, the Commissioner's decision is affirmed.

**BACKGROUND**

1- OPINION AND ORDER

Plaintiff was born on February 26, 1949. He completed the tenth grade followed by community college schooling and obtained an Associate's in Science (A.S.) degree in Construction and Arts. He also received two years training as a medical assistant. Plaintiff worked as a pest control field technician, a hospital surgery nursing assistant, a drug recovery program van driver, and an automotive technician. He stopped working in May 2000 because of back pain.

He applied for SSI benefits on August 27, 2001. In this application he alleged disability since May 16, 2000, based on degenerative disc disease compounded by soft tissue damage to his lower back and chronic pain. He later also complained of hearing loss, a seizure disorder that is generally well controlled by medication, neck and facial pain from Bell's palsy, and mental health problems. He was denied benefits initially and upon reconsideration.

An Administrative Law Judge (ALJ) conducted a hearing on February 10, 2004. The ALJ heard testimony from plaintiff, who was represented by an attorney; plaintiff's wife, Jerri Moore; and a vocational expert (VE), Jeffrey Tittelfitz. The ALJ also considered records and opinions from several physicians and psychologists, including physicians Dr. Stephen Patterson, Dr. Scott Pritchard, and Dr. John Sproed, and psychologists Dr. Terry Isaacson, Dr. Peter Moulton, and Dr. Bill Hennings. Tr. 21-24.

The ALJ issued a decision dated May 28, 2004, finding that plaintiff had the residual functional capacity (RFC) to perform a reduced range of light work, that there are significant numbers of jobs in the national economy he could perform, and that plaintiff is not disabled within the meaning of the Social Security Act.

The Appeals Council denied plaintiff's request for review on July 18, 2005, meaning that the ALJ's conclusions were adopted as the Commissioner's final decision. Plaintiff subsequently initiated this action seeking judicial review of that decision.

## STANDARD OF REVIEW

This court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 USC § 405(g); *Batson v. Comm'r of Social Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). Substantial evidence is "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997) (citation omitted); *see also Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995) (substantial evidence means more than a mere scintilla but less than a preponderance; such relevant evidence as a reasonable mind might accept as adequate to support a conclusion).

The ALJ is responsible for determining credibility and resolving conflicts and ambiguities in the evidence. *Batson*, 359 F.3d at 1193. The Commissioner, not the reviewing court, must resolve conflicts in the evidence. *Benton v. Barnhart*, 331 F.3d 1030, 1035 (9th Cir. 2003) (citation omitted); *Reddick v. Chater*, 157 F.3d 715, 720-21 (9th Cir. 1998) (citation omitted); *see also Andrews*, 53 F.3d at 1039-40 (Commissioner's decision must be upheld even if the evidence is susceptible to more than one rational interpretation).

The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (quotation and citation omitted). This court must uphold the Commissioner's denial of benefits even if the

evidence is susceptible to more than one rational interpretation, as long as one of the interpretations supports the decision of the ALJ. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citation omitted); *see also Benton*, 331 F.3d at 1035 (the Commissioner's decision must be upheld in instances in which the evidence would support either outcome).

## DISABILITY STANDARDS

To establish an eligibility for benefits, a plaintiff has the burden of proving an "inability to engage in any substantial gainful activity (SGA) by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner has established a five-step sequential evaluation process for determining if a person is eligible for benefits because of disability. 20 C.F.R. §§ 404.1520, 416.920; *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989).

First, the Commissioner determines whether the claimant is engaged in SGA. If the claimant is so engaged, disability benefits are denied. If not, the Commissioner proceeds to step two and determines whether the claimant has a medical impairment that meets the regulatory definition of "severe." 20 C.F.R. § 404.1520(a). If the claimant lacks this kind of impairment, disability benefits are denied. 20 C.F.R. § 404.1520(c).

If the claimant's impairment is severe, the Commissioner proceeds to the third step to determine whether the impairment is equivalent to one or more impairments that the Commissioner has recognized to be so severe they are presumed to preclude substantial gainful activity. 20 C.F.R. § 404.1520(d). These are listed in 20 C.F.R. Part 404, Subpart P, Appendix 1

4- OPINION AND ORDER

("Listing of Impairments"). If the claimant's condition meets or equals one in the Listing of Impairments, the claimant is presumed conclusively to be disabled.

If the impairment is not one that is presumed to be disabling, the Commissioner proceeds to the fourth step to determine whether the impairment prevents the claimant from engaging in work that the claimant has performed in the past. If the claimant is able to perform his or her former work, a finding of "not disabled" is made and disability benefits are denied. 20 C.F.R. § 404.1520(e).

If the claimant is unable to perform work that he or she has performed in the past, the Commissioner proceeds to the fifth and final step to determine if the claimant can perform other work in the national economy in light of his or her age, education, and work experience. The claimant is entitled to disability benefits if he or she is not able to perform any other work. 20 C.F.R. § 404.1520(f).

The claimant bears the initial burden of establishing his or her disability. In the five-step framework used by the Commissioner, the claimant has the burden of proof as to steps one through four. In step five, the burden shifts to the Commissioner to show there are a significant number of jobs in the national economy that the claimant can perform given his or her RFC, age, education and work experience. *Gomez v. Chater*, 74 F.3d 967, 970 (9th Cir. 1996). If the Commissioner cannot meet this burden, the claimant is considered disabled for the purposes of awarding benefits under the Act. 20 C.F.R. § 404.1520(f)(1). If the Commissioner meets this burden, the claimant must be deemed not disabled for purposes of determining benefits eligibility. 20 C.F.R. §§ 404.1566, 404.1520(g).

## SUMMARY OF ALJ'S FINDINGS

At step one, the ALJ found that plaintiff had not engaged in SGA since his alleged disability onset date. Tr. 21,[1] Finding 2.

At step two, the ALJ found that plaintiff had severe physical impairments, including degenerative disc disease of the lumbar spine and a history of seizure disorder. Tr. 24, Finding 3.

At step three, the ALJ found that plaintiff's impairments, individually and in combination, did not meet or equal the requirements of a listed impairment. Tr. 24, Finding 3.

At step four, the ALJ found that plaintiff was unable to perform his past relevant work. Tr. 28, Finding 7. The ALJ so found after determining that plaintiff maintained the RFC to perform a significant range of light work. Finding 11. The ALJ's RFC assessment provided:

> Based on his history of a seizure disorder, the claimant must avoid hazardous conditions (moving machinery, heights, scaffolds, ladders, etc.). The claimant is limited to only occasional crouching, crawling, kneeling, and stooping. Based on his allegations of having a hearing impairment, he is precluded from environments that could damage hearing. He is precluded from high stress environments.

Tr. 28.

The ALJ acknowledged that plaintiff may suffer from post-traumatic stress disorder, a pain disorder, and a depressive disorder. Tr. 23, 26. However, the ALJ concluded that "the claimant's affective disorder/post-traumatic stress disorder created only mild limitation to the claimant['s] activities of daily living, social functioning, and concentration . . . ." Tr. 23-24.

---

[1] Citations beginning with "Tr." refer to pages in the official transcript of the administrative record filed with the Commissioner's Answer.

Therefore, the ALJ excluded any findings of psychological impairments, concluding that plaintiff's "limitations are a result of physically based pain." Tr. 26.

At step five, the ALJ found that, although plaintiff's exertional limitations preclude a full range of light work, there are significant numbers of jobs in the national economy that plaintiff could perform. These include an escort vehicle driver, parking lot attendant, first aid attendant, and chauffeur or courier driver. Tr. 28-29, Finding 12. The ALJ concluded that plaintiff was not disabled as defined by the Social Security Act and, therefore, ineligible for SSI payments.

## DISCUSSION

Although plaintiff's brief is unclear in some respects, it appears that plaintiff challenges the ALJ's evaluation of the evidence and alleges errors at steps four and five of the ALJ's analysis. Specifically, plaintiff argues that the ALJ erred in evaluating the opinions of Dr. Isaacson and Dr. Moulton. Plaintiff also asserts that the ALJ erred by improperly discrediting plaintiff's testimony and in evaluating the lay testimony of plaintiff's wife. Finally, plaintiff asserts that the ALJ erred in determining plaintiff's RFC and employability.

**1.    Plaintiff's Testimony**

Plaintiff asserts that the ALJ erred in evaluating plaintiff's testimony. If an ALJ finds that a claimant's testimony relating to limitations is unreliable, the ALJ must make a credibility determination citing the reasons why that testimony is unpersuasive. *See Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991). The ALJ must identify specifically what testimony is credible and what testimony undermines the claimant's complaints. *See Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995) (citation omitted); *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).

7- OPINION AND ORDER

In evaluating a claimant's claim of subjective symptom testimony, the ALJ must determine whether the claimant has produced objective medical evidence of an underlying impairment which could reasonably be expected to produce the symptoms alleged. 20 C.F.R. § 404.1529(a); *Smolen v. Chater*, 80 F.3d 1273, 1281-82 (9th Cir. 1996) (citation and quotation omitted). An ALJ may consider medical evidence as a relevant factor in determining a claimant's credibility. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).

The Ninth Circuit set out a threshold test in *Cotton v. Bowen* (reaffirmed in *Bunnell*) to assist the ALJ in deciding whether to accept a claimant's subjective symptom testimony. *See* 799 F.2d 1403 (9th Cir. 1986). If the claimant produces evidence that meets the *Cotton* test, and there is no evidence of malingering, then the ALJ can reject the claimant's testimony about the severity of symptoms only after offering specific, clear and convincing reasons for doing so. *See Dodrill*, 12 F.3d at 918.

Under the *Cotton* test, a claimant who alleges disability based on subjective symptoms must meet two tests. First, the claimant "must produce objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged. . . .'" *Bunnell*, 947 F.2d at 344 (quoting 42 U.S.C. § 423(d)(5)(A) (1988)); *see also Cotton*, 799 F.2d at 1407. Second, he or she must show that the impairment or combination of impairments could reasonably be expected to (not necessarily that it did) produce some degree of symptom. This means that the claimant need not produce objective medical evidence of the *symptom*, or the severity thereof:

> Nor must the claimant produce objective medical evidence of the causal relationship between the medically determinable impairment and the symptom. By requiring that the medical impairment "could reasonably be expected to

8- OPINION AND ORDER

produce" pain or another symptom, the *Cotton* test requires only that the causal relationship be a reasonable inference, not a medically proven phenomenon.

       Finally, the claimant need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom. This approach reflects the highly subjective and idiosyncratic nature of pain and other such symptoms. . . . Thus, the ALJ may not reject subjective symptom testimony under the *Cotton* analysis simply because there is no showing that the impairment can reasonably produce the *degree* of symptom alleged (emphasis in original).

*Smolen*, 80 F.3d at 1282 (emphasis added) (citations and footnote omitted).

In addition to medical evidence, factors relevant to the ALJ's credibility determination include: a plaintiff's daily activities; the location, duration, frequency, and intensity of his or her symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of any medication; treatment, other than medication; measures used to relieve symptoms; and functional limitations caused by the symptoms. *Id.* at 1284; 20 C.F.R. § 404.1529(c)(3).

"The ALJ must state specifically which symptom testimony is not credible and what facts in the record lead to that conclusion." *Smolen*, 80 F.3d at 1284 (citation omitted). In determining that subjective testimony is not credible, the ALJ may rely on:

    (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities.

*Id.* (citations and footnote omitted).

In sum, if the plaintiff has met the burden of showing that his or her impairment or combination of impairments *could reasonably be expected to* (not that it did in fact) produce some degree of the symptoms plaintiff's testimony describes, and there is no evidence suggesting that the plaintiff is malingering, the ALJ may not reject testimony regarding the severity of

9- OPINION AND ORDER

plaintiff's symptoms unless there are clear and convincing reasons for doing so. *Id*. at 1283; *see also Moisa v. Barnhart*, 367 F.3d 882, 885 (9th Cir. 2004).

In this case, plaintiff produced some objective medical evidence regarding his impairments. However, the ALJ also referred to clear and convincing evidence in the record supporting the ALJ's ultimate rejection of plaintiff's testimony about his ability to work. The ALJ examined the relevant medical reports extensively before concluding that plaintiff's testimony regarding the impact of his impairments was only partially supported by the medical evidence. The ALJ acknowledged that plaintiff's condition included degenerative disc disease of the lumbar spine and a history of seizure disorder, and included these issues in deciding to restrict plaintiff to light and sedentary work that does not entail hazardous conditions or a high stress environment. Tr. 24, 28.

Although the ALJ accepted that plaintiff's condition included a pain disorder, the ALJ concluded that plaintiff's subjective testimony regarding his pain exaggerated his symptoms and was only partially credible. Tr. 26-27. The ALJ noted that neurologist Dr. Patterson found "no obvious etiology for [plaintiff's] chronic lower back pain based on a November 2000 MRI and other factors." Tr. 21.

The ALJ relied on ordinary techniques for evaluating plaintiff's credibility, including a test administered by Dr. Moulton that suggested symptom exaggeration. Tr. 23, 26. Other evidence also supports the ALJ's conclusion that plaintiff embellished his symptoms. For example, plaintiff was observed walking from the parking lot to Dr. Sproed's office without a limp or any obvious distress, but when he entered the office plaintiff complained of hip pain and moved stiffly and slowly while groaning. Tr. 230. Accordingly, the ALJ reasonably concluded

that plaintiff's subjective testimony regarding his limitations was an unreliable basis upon which to establish plaintiff's RFC. Tr. 26-27.

Moreover, there is evidence that plaintiff enjoys numerous activities of daily living that establish that he is not as limited as he testified. The ALJ noted plaintiff's activities reported by his wife, which included taking short walks, driving, going to the grocery store and doing other kinds of shopping, eating out, caring for his pet, folding laundry, vacuuming, performing minor home repair and maintenance, and doing automotive work. Tr. 25. An ALJ may properly consider a claimant's activities of daily living when assessing his or her credibility. *See Thomas*, 278 F.3d at 958-59.

This court concludes that plaintiff's credibility was evaluated properly in light of the lack of medical evidence to support the severity of limitations he claimed, his reputation for truthfulness, and the inconsistencies between his reported daily activities and his alleged limitations. The ALJ offered clear and convincing reasons for rejecting plaintiff's allegation of disability, which are supported by substantial evidence. Tr. 26-27.

**2.      Medical Opinions**

The court concludes that the ALJ did not err in rejecting the opinion of Dr. Moulton and the post-hearing opinion by Dr. Isaacson. While clear and convincing reasons are required to reject an examining physician's uncontradicted opinion, an ALJ need only provide specific and legitimate reasons, supported by substantial evidence, to reject an examining physician's opinion that is contradicted by another physician. *Andrews*, 53 F.3d at 1041.

Plaintiff claims that the ALJ improperly disregarded the opinion of psychologist Dr. Moulton, who examined plaintiff after the hearing. Based on plaintiff's reports of pain and his

11- OPINION AND ORDER

behavior during the examination, Dr. Moulton concluded that plaintiff's pain disorder would preclude him from maintaining acceptable levels of punctuality and attendance, and would limit his concentration to twenty-minute intervals. Tr. 553. Dr. Moulton acknowledged that plaintiff's emotional and cognitive status would not preclude employment, and that plaintiff's physical difficulties were outside the scope of his expertise. Tr. 553.

In rejecting Dr. Moulton's opinion, the ALJ noted the contrary opinion of other physicians, including Dr. Sproed, who was plaintiff's treating physician and the doctor who prescribed his medications. Tr. 26-27. Doctor Sproed determined that plaintiff could sustain employment involving non-physical exertional activities in a non-stressful work environment. Tr. 23. The ALJ remarked that, given the physical nature of plaintiff's alleged disability, Dr. Sproed, was in the best position to evaluate plaintiff's pain. Tr. 26.

Furthermore, the ALJ noted that Dr. Moulton's assessment was based on plaintiff's subjective descriptions of his pain, which the ALJ had concluded was exaggerated. Tr. 27. An ALJ may properly disregard a medical opinion, even the opinion of an examining source, which is based on the self-reporting of a properly discredited claimant. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001). Therefore, the court concludes that the ALJ 's rejection of Dr. Moulton's opinion was supported by substantial evidence.

Plaintiff also contends that the ALJ erred in rejecting a post-hearing opinion by Dr. Isaacson, plaintiff's treating psychologist. Before the hearing, Dr. Isaacson stopped short of characterizing plaintiff as disabled, and implicitly deferred to the judgment of plaintiff's treating physician. As noted by the ALJ, Dr. Isaacson acknowledged prior to the hearing that plaintiff's ability to work turned on his physical status and resulting cognitive deficits and pain, rather than

any mental health conditions. Tr. 22. Thus, Dr. Isaacson's pre-hearing opinion did not support a finding that plaintiff was disabled.

After the hearing, in response to a letter by plaintiff's counsel, Dr. Isaacson stated that plaintiff "would be unable to sustain satisfactory work performance over a period of weeks to months" as a result of his "psychological response to the pain arising from his physical problems." Tr. 569-70.

Because this later opinion was contrary to Dr. Sproed's opinion that plaintiff could work, the ALJ was permitted to disregard it based on specific, legitimate reasons supported by substantial evidence. *See Andrews*, 53 F.3d at 1041. The ALJ concluded that Dr. Isaacson "left his impartial role" and "flip-flopped" to become plaintiff's advocate. That finding constitutes a specific, legitimate reason for disregarding Dr. Isaacson's post-hearing opinion. *See Matney v. Sullivan*, 981 F.2d 1016, 1020 (9th Cir. 1992) (physician's agreement to become claimant's advocate was specific, legitimate reason for disregarding that physician's opinion). Therefore, the ALJ properly disregarded Dr. Isaacson's post-hearing opinion.

**3.     Lay Testimony Evaluation**

Plaintiff argues that the ALJ did not give proper consideration to the testimony of plaintiff's wife, Jerri Moore. An ALJ need only give germane reasons to reject lay witness testimony. *See Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001); *see also Smolen*, 80 F.3d at 1288.

The ALJ accepted Moore's written report regarding plaintiff's daily activities, but found her testimony regarding plaintiff's symptoms and her descriptions of plaintiff suffering side effects from medications unpersuasive. Tr. 25-26. The ALJ rejected Moore's testimony that

13- OPINION AND ORDER

plaintiff suffered chronic loss of appetite as a result of his medication because plaintiff reported his weight at 195 pounds, fifteen pounds heavier than what he reported three years previously as his "normal" weight. Tr. 25. The ALJ also noted that Moore's testimony that plaintiff had withdrawn from all social interaction conflicted with her previously written report that plaintiff visited with neighbors daily. Tr. 25. The ALJ provided germane reasons for rejecting Moore's testimony and correctly concluded that Moore's testimony was inconsistent with the plaintiff's and her own reports. *Id*.

**4.     Residual Functional Capacity and Employability**

Finally, plaintiff argues that the ALJ erred by relying upon an inadequate RFC in developing hypothetical questions for the VE at step five. As noted above, the ALJ must determine if the claimant is capable of performing work existing in the national economy. The ALJ can support this by showing that jobs exist in the national economy that the claimant's RFC permits him to perform.

The ALJ's first hypothetical question to the VE began by describing a person who is fifty-four years old with an Associate's in Science degree and with work experience as a nurse's assistant, van driver, and automotive technician. Tr. 655. The VE was asked to consider a prospective employee who is limited from lifting and carrying more than ten pounds frequently, with an occasional 20-pound maximum. *Id.* The employee is limited to occasional stooping, bending, kneeling, crouching, and crawling. Tr. 655-56. The employee should avoid working at heights or climbing scaffolds, ropes, and working around dangerous moving machinery. Tr. 656. The employee should not work in high-stress environments or in environments that could damage hearing. *Id.*

14- OPINION AND ORDER

The VE testified that all jobs in which plaintiff was experienced would be eliminated but the VE identified other jobs that would be appropriate, including first aid attendant, chauffeur or courier, escort vehicle driver or parking lot attendant. Tr. 657-58.

Plaintiff complains that the ALJ's hypothetical question omitted or improperly discounted psychological limitations resulting from his pain, including limitations in concentration, attention, social adaptation, and the need to use pain management techniques. When plaintiff's counsel asked the VE to consider such limitations, the VE testified that they would preclude competitive work. Tr. 664-69.

The ALJ was not required to include such limitations in the hypothetical question because the ALJ concluded properly that these limitations were not supported by substantial evidence. *See Magallanes v. Bowen*, 881 F.2d 747, 756-57 (9th Cir. 1989) (an ALJ is not bound to accept as true any restrictions presented in a hypothetical question propounded by a claimant's counsel, but may choose to accept these restrictions if they are supported by substantial evidence). As discussed above, the ALJ properly found plaintiff's and his wife's testimony about the extent of plaintiff's symptoms to be unpersuasive and/or exaggerated.

Having discredited plaintiff, the ALJ properly rejected Dr. Moulton's opinions regarding plaintiff's psychological limitations, since they were based on plaintiff's subjective reporting and behavior. Moreover, the ALJ properly rejected Dr. Isaacson's post-hearing opinion regarding plaintiff's cognitive limitations to the extent it exceeded the scope of his earlier opinions. The hypothetical question posed by the ALJ was consistent with the objective medical evidence, including the opinion of plaintiff's treating physician. Accordingly, the ALJ's step-five analysis was proper.

## CONCLUSION

Based on the foregoing, this court concludes that the findings of the Commissioner are based upon correct legal standards and are supported by substantial evidence existing in the record. The Commissioner's decision denying plaintiff's application for SSI benefits is AFFIRMED.

IT IS SO ORDERED.

DATED this  22   day of December, 2006.

      /s/  Ancer L. Haggerty  
      Ancer L. Haggerty  
      United States District Court